you've, uh, you reserved three minutes of your time for the bill, correct? Yes, Your Honor. Okay, you may, you may begin when you're ready. Thank you, Your Honor. May it please the Court. Judgment in this matter should be reversed because in rejecting the Correction Board's recommendation, the Secretary addressed the factors that Mr. Strand believed was, believed were relevant, and after weighing conflicting considerations, she made a discretionary decision that a service member who had been discharged after having been convicted for shooting a gun at his wife and another person was not entitled to six months of service credit and an honorable retirement from the Navy. The Secretary followed all applicable procedures and her decision complies with the law. The trial court therefore erred in setting that decision aside and entering judgment for Mr. Strand. Uh, I of course want to spend most of my time talking about the merits of our appeal, but I recognize that Mr. Strand has a motion to strike pending. Unless the Court would like to hear that now, I'd like to... No, let's just finish with that. We'll respond to your motion to strike in whatever opinion comes from the Court. So we'll let the parties go ahead and make their arguments. Okay, sure. Thank you, Your Honor. How many events were there of misconduct? Was there a 92 event and a 93 event? Yes, Your Honor. Two separate events? They were, Your Honor. The Secretary's decision makes clear that the 1992 non-judicial punishment was one event and whatever the event was that resulted in the counseling entry of 1993 was a separate event. And so, uh... Okay. So I think there are really three key reasons why the Secretary's decision should be upheld. As I mentioned, the Secretary considered all the factors that Mr. Strand identified as relevant to her inquiry. Mr. Strand's letter that he provided during the remand mentioned the Navy Corps values, the service record, his convictions, other cases, and the Secretary considered all of those factors. Mr. Strand has not identified anything that the Secretary didn't consider, nor has he identified an error of fact or law in his records. This is a pure equitable decision. It was a judgment call that the Secretary was authorized by this Court's precedent. What was the 1993 event? It's unclear, Your Honor. It involved abuse of alcohol. What do you mean it's not clear? The record does not describe the event. It only describes sort of the cause of the event. It was an alcohol-related incident, I believe. I'm sorry, excuse me, I'm confusing the 1992 event with the 93 event. The 93 event evidently involved some issue with Mr. Strand being able to control his anger because the counseling that was suggested was anger management counseling. But it's unclear whether it was... You're confusing that with the 92 event? When I was answering your question, I confused that with the 92 event. The 92 event stemmed from overindulgence of alcohol. But the 1993 counseling is not the result of the 1992 event? Correct. The Secretary's remand decision... Where does it say that? It is page 283 of the Joint Appendix, and it's the second full paragraph down. The record shows that in 1992, Petitioner was counseled for abuse of alcohol, which resulted in disorderly conduct. And then in the next sentence, it starts with, despite, four lines down. So, despite the Navy's attempt to allow the Petitioner the opportunity to rehabilitate himself while in the Naval Service, Petitioner again engaged in misconduct in 1993. Yes, I... It seems to me the Secretary believes that there was two separate incidents. But I don't... I'm not sure because I don't see where else there's a description of what the 93 event was. The 1993 event is described on page 118 of the appendix. That's the counseling entry from September 1993. And really all we have to go on here, Your Honor, is the second paragraph. The following are recommendations for corrective action and rolling courses offered by the Navy Family Services Center, such as building effective anger management skills or stress management skills. It doesn't say anything about the 93 event. Your Honor, this counseling entry is dated September... Right. 1993. And then the 1992 event is described because of the way the record was... Now that event, we know what that was. And we know, you know, what occurred. And the record is clear on that. I don't see anything in the record that has the same clarity with respect to the 93 event. Well, I think that that can partially be attributed to the types of disciplinary entries we're talking about here. At 1992, it was a non-judicial punishment. In 1993, it was simply a warning, or merely a warning. There was no punishment, so to speak. It was just that apparently there was some incident. I think that the point... The Secretary referred to these two entries simply to illustrate that Mr. Strand was on notice that he needed to abide by the Navy's standards of conduct. I'm sorry, I'm going to go back to this page 118 for one minute. That first paragraph does refer to the 1992 event, right? Correct. Okay. All right. So you're saying that's not... This counseling in 1993 isn't saying that the 1992 event is the only event on which the counseling is based. I mean, it reads as if it is, but I can't tell. I read that as saying, you have this in your record. This was already existing in your record. This is an additional counseling that we are... Well, it does. And it says, violation of... And it goes on talking about the military articles. And as evidenced by the commanding officers in JP of February 92. And it goes on with other identification aspects of the service record related to the 92 event. The next paragraph, it says, so here's your corrective action. And I don't see anything similar, any identification indicia with respect to the 93 event that we see for 92. And you're saying it happened. But it's not clear what happened. Well, I would defer to the secretary on this. I mean, she's the expert on this. Well, the secretary's not here. You're here on behalf of the secretary, correct? Correct. Well, it's your question to answer, sir. Well, I don't have any reason to doubt the secretary's characterization of these as being two separate events. Well, we're looking at evidence. And as I read these records, I believe they describe two different events. One was an alcohol-related incident. And one stemmed from something involving inability to control with his anger or stress. For us, the critical point isn't so much... The first event involved a barroom fight. Perhaps. Okay. Why wouldn't the reference to anger control or management of anger refer to the 92 event? Well, it seems that the 92 event stemmed from the overindulgence of alcohol. You don't see in the 1993 counseling entry any reference to alcohol. I'm not disputing that those two things can exist simultaneously. It could have, right? But we don't know. Correct. Because we don't know what happened in that 93. That's correct, Your Honor. The record's not clear as to that incident. That's correct, Your Honor. And I think the important point is that in 1992 and again in 1993, Mr. Strand was warned about the fact that he needed to follow the Navy or needed to meet the Navy's standards of conduct. And those always included honor, courage, and commitment even before they were designated as the core values. But certainly after they were designated as the core values, he was evaluated based on his adherence to those values, and he recognized in 2008 that he violated those core values. That's really why the Secretary referred to these two entries. It wasn't to... Do you think it would have mattered to the Secretary if there were two early incidents or one early incident? You basically just summed up exactly what I was trying to say. I don't think that it matters. What matters is that he was warned twice. I mean, the reason he's not getting his six months credit is because he shot at his wife and served, what, like three months, three years in jail for it? Correct, Your Honor. I mean, that's one of the reasons. I mean, the main reason, certainly. And so you're exactly right, Your Honor. It wouldn't matter whether there were one or two. In our view, it's the fact that he was warned that there would be consequences for failing to meet these standards. We don't know that. We don't know if it would matter to the Secretary or not. Let's say this went back and there was only one... She looks at the... Or the Secretary looks at the record again and says, oh, gee, there was only one event. That does impact the core value analysis. It does impact my statements on, again, engaging misconduct, repeated notices, history of performance of conduct. Well, I will say that maybe I should have... It's possible that the Secretary could say, well, I was wrong the first time. Well, I will say that Mr. Strand has never challenged that these were two separate incidents. Maybe I should have mentioned that at the beginning. But if you look through the Secretary's remand decision and she makes clear, the key point is that he was warned twice. Whether it was one event or two events, he was warned twice about his need to meet these standards of conduct. This isn't a case like a regular civilian removal case where in order to justify the removal, they said you did this, this, and this. If you'd only done one of these things, we may not have removed you. The Secretary's letter on remand, at least, was pretty clear that the serious charge here that is why she's not granting the corrective relief is committing a felony and serving jail time. And that she relied on these other incidents to give notice that you shouldn't do that. Honestly, I don't know why anybody needs notice, particularly if you're serving in the military, that you shouldn't shoot at somebody and commit a felony. But at least she pointed that out, that there was at least one instance in the record where he was given notice about not committing misconduct. That's correct, Your Honor. I completely agree with what you just said. And it is the convictions. I mean, I think she makes clear there at the end of the last paragraph that ultimately it came down to the favorable factors in the record, in her mind, didn't outweigh the impact of these criminal convictions. And as we pointed out in our brief, in the Cedillo case, it's something that this Court has said it cannot second-guess.  You're interviewed. Thank you, Your Honor. Good morning, Your Honors. You may please the Court. Lucas Hamback on behalf of Walter Strand III. With me today is Mr. Jeffrey Shio. Your Honors, we've stated in the papers the reason that the Secretary's decision is arbitrary and capricious, and the papers state our arguments very clearly. What Mr. Green just said to you at the start of his argument is really the important point here. The Navy is seeking to create a carve-out of unreviewable and absolute discretion that it does not have under the current statute. It's seeking to do that in two ways. By saying that it can always reverse the board as it sees fit, and by cloaking itself in the core values and saying that the courts don't have any power to review these decisions. Well, sure, we have power to review it for arbitrary and capricious or the like. I don't think the government is saying it's unreviewable altogether. It's just that the Secretary has statutory authority and regulatory authority to override the board if he or she gives good reasons, and we have to review those reasons with a deferential standard. That's correct, Your Honor. In fact, the last time we were here, you and I had a colloquy on exactly that point. But to answer Your Honor's concerns, it's important to look at what the statute actually says. In the Navy, in their reply brief on page 8, they point to some of the case law in this area where it talks about when the AGC can and cannot overrule the board, and they cite dicta that's in the Weiss case, which is from 1969, if I remember correctly. In Weiss, they point out that the Weiss Court backed off of a hard and fast rule that says that the AGC can never overrule the board. In fact, this Court has more recently reaffirmed that in cases like Strickland. It said that that's not the rule. It's not a bright line that you can never do it. But what Weiss says is that the application is controversial, and you have to look at the facts, and that's what this Court has always done. What the Navy ignores in making their arguments is that proper, the case that established that rule in the late 50s, very close to the establishment of these boards, was a case about disputed evidence, and the way that the board weighted it versus the way that the AGC weighted it. And the Court found that it was improper for the AGC to weight the evidence differently. And if you look at the proper case, there's a dissent that talks about this, and they mention that there was also a dissent at the BCNR. It wasn't the BCNR, it was a different board. But there was a dissent on the board, and the AGC had just re-weighted the opinion. So it's not the case that just because there's a difference of opinion about how this should be weighted, that the Court can't review it either. So what do you think the standard is that allows the Secretary to overrule a board determination, and where is that in the statute or any of the regulations? The first place to find it, Your Honor, is 1552A2. And if you look at that, Your Honor, that provision expressly carves out some cases where the Secretary concerned is not required to act through a board. Those cases are cases where enlisted members are eligible for promotions or re-enlistments. Mr. Strand's case doesn't fall there. Everything else falls under 1552A1, where such corrections shall be made by the Secretary acting through boards of civilians. And that's consistent with the language in cases like Herzog, Proper, Weiss, Lanningham, cases that have followed down through the decades. And as to Your Honor's... But where do you go from there? I mean, sure, it's not in the group of the cases that the Secretary can act without a board altogether. It's a case where the Secretary will generally act through the board. But I think you conceded that the Secretary can, at least in some circumstances, overrule the board. Is there anything in the statute that specifies which of those circumstances are? No, Your Honor, and it's a bright line that this Court has wisely refused to draw. And I think, to answer your question, this goes back to the last colloquy. What is the way in which the Secretaries properly exercise his or her discretion? Is it not just looking at the Secretary's decision, looking at the reasons there, and determining whether they're arbitrary, capricious, or contrary to law, or not supported by substantial evidence? It is that standard, Your Honor, but admittedly, this is from DICTA in the cases. The cases have indicated that one of the reasons you can do that is if the Secretary points to additional evidence that the board didn't consider. And I think we had an exchange on this the last time we had this incident. I get what you're trying to do, but that's not in our normal, arbitrary, and capricious review, is it? I mean, the Secretary, if they're entitled to take another look, and there's nothing statutorily that restricts them from new evidence, or new arguments, or the like, then they can look at the same evidence and say, you just blew it. I think you got it wrong. This guy doesn't deserve to have his records corrected, and here's the reason. And as long as they're not arbitrary, why isn't that within the Secretary's authority? As long as they're not arbitrary. That's the answer. But here's, you know, you're trying to suggest that there's something kind of legally wrong about it here. Why are you not just directing why you think the Secretary's decision here is arbitrary? And the Secretary's decision here is, I think we've talked about, this guy shot at his wife, committed a felony, was convicted of a felony, and served jail time for it, which prevented him from serving out his 20 years. That's what she relied on. She relied on the fact that he'd been notified of he shouldn't do things like this a long time ago. What's arbitrary about that? Well, the Navy's regulations for the board say that consideration of that incident and the fact that the Navy reached the right decision in that, with respect to that incident, discharging Mr. Strand administratively, should not, it cannot be the sole basis upon which he's denied relief. We've cited that in our papers. It's 32 CFR 723.3e2. And in arguments below, I'm sorry, in its papers below, specifically in its response to our MJAR, which is docket number 86 below page 7, the Navy conceded we interpreted that statute correctly. What the Navy has said is that that statute doesn't bind the Secretary, it only binds the board. Well, here, Your Honor, the statute at 1552 A3 says, corrections under this section shall be made under procedures established by the Secretary concerned. It's not credible for the Secretary where the statute says that the Secretary... I'm not sure I follow this line of argument. Are you saying that because he was administratively discharged from the Navy because of this felony conviction in jail time, that they can't further use that as a basis for not giving him relief under the correction board decision? I'm saying it can't be the sole basis, Your Honor. And the reason for that goes to the very heart of why Congress established these boards in the first place, and you see that in the language in PROPER. PROPER talks a little bit about the legislative history, and we've also cited it in our papers, I believe pages 18 through 20 talk a little bit about the creation of these boards. The boards were created in the wake of World War II when Congress realized that as part of the war effort mobilization, lots of people got sucked into the military justice system, and that system has to be harsh in order for the military to function. But when people exit that system with black marks in their record that prevent them from reintegrating into civilian life, the way that they've been treated doesn't always align with civilian notions about due process, fairness, equity, and so the Congress carefully created the boards and directed that these decisions be made by civilians. In fact, the PROPER Court specifically noted that. It said, neither the act itself nor the legislative history warrant such an interpretation. This is in response to an argument similar here that these are just advisory opinions that can be rejected. PROPER Court said, since the errors were injustices, which might require correction were originally made by the military, Congress made it manifest that the correction of those errors and injustices was to be in the hands of civilians. And so the reason, Your Honor, that you can't just look at the one act that he was punished for, that he got right, is this is a holistic review that the board engages in, based on not just a split-second mistake one time, but a 30-year period, 20 years of which is service to this nation. Almost 11 and a half years of it deployed supporting three war efforts where everything in the record shows that his fit reps are stellar. Everybody says he was one of the best sailors that served in the Navy up until this incident. And then now here we are 10 years later where he earned an early release from prison. He's putting his life back together. He's reconciled with the people that he's hurt. The board is answering the question, has he suffered enough for his sole indiscretion? That's what they say in their decision. And the reason that the rule exists in 32 CFR 723.3 is because if you ignore all of that other stuff, you're just defaulting back to the harsh military system that Congress sought to get away from in these cases. And so that's the reason, Your Honor, in a more holistic view of this case, that Mr. Strand should be granted relief. And I do want to caution here. I think the Navy has invited this court to feel that it is going to issue a ruling if it rules in favor of Mr. Strand that's going to have some broad and detrimental impact to the Navy's personnel management or its ability to apply its core values or define what they are. That's not what this court is being asked to do at all. Mr. Strand's case can be decided on his unique merits and indeed that's what the Navy's regulations require. And that's all that should be done. You're not asked to define courage for the Navy. You're just asked to say whatever courage means, you can't apply it to conduct in 1992 that predates the establishment of a core value. Whatever commitment means, you can't counsel a sailor for an alcohol incident and then assign him high proficiency in conduct marks, award him a good conduct medal for the same period, reenlist him for 20 years, and at the end say, sorry you had an alcohol incident when you were 19, now you're going to be denied a retirement because you violated the core values. You know, it doesn't matter what this court thinks about honor. What matters here is that the secretary can't refer to military criminal appeals cases that are procedurally inapposite, one of which is from a service that doesn't even have the same core values. So we remanded before, this court remanded the case on the basis that the secretary's decision was not supported by substantial evidence, correct? That's correct, Your Honor. Are we looking at the same arguments that were made in the prior case? You are, Your Honor. Well, you are looking at a beast of arguments. What about the core value arguments? Yes. Are they different or the same? So the Navy made the argument about core values because its prior decision had a one-line treatment of them. It said that its conduct was inconsistent with core values and practice in similar cases. Throughout the arguments, the last time this case came up through the courts, the Navy expounded on that a bit and a lot of what they said is similar to what they now say, though they give it a more fulsome treatment. So we found a lack of substantial evidence with respect to the finding of domestic violence, correct? That is correct, Your Honor. You found that that was their second rationale. Now, you heard my questions before to counsel about a separate event, and that seems to me that the 94 event, 93 event, had it occurred, I don't know. It seems to me that's the one that deals with domestic violence. Your Honor, I think that it's not clear from the record. My understanding is that it was an alcohol related incident that was disorderly conduct. Do you agree it was a separate incident from the 1992 incident? No, Your Honor. Our position is it's the same, and in fact, if you look at the 1993 incident, it references that initial counseling that you see in the record. It references it right there in the first paragraph. It says it was advanced by 27 February 1992. The record suggests that this is just a follow-up warning, and also the reminder you've got to get counseling for alcohol treatment. That's exactly right, Your Honor. It's a continuing course to make sure that a great sailor stays on the right path and doesn't mess up again. That's all it is. And, Your Honor... Wait, you think that that 93 letter is just some kind of recommendation to keep getting counseling and stuff like that? Well, I think, Your Honor... When you look at that, I mean, when military people get these kinds of counseling letters in their record, it's not just because somebody's saying, oh, keep up, you know, with the work. This is actually a detrimental notice in their record. I agree, Your Honor, but... And this is a little... Well, you were attempting to characterize it as a follow-on to just keep getting counseling from the 92 event. And that doesn't seem like something that would happen in the military. I agree, the 93 notice itself is very, very confusing, but it doesn't necessarily seem to me that it's clearly tied to the 92 event. It seems like you had a problem in 92, you got some kind of reprimand or punishment for it, or whatever they got, and then you did something else in 93, and you've got to get some counseling for this. It may be... We don't understand it that way, Your Honor. We understand it to be one incident where there have been two counselings, and the reasons for that, we don't know. But assuming that Your Honor is right, the test here is whether the AGC's decision, nearly 25 years later, to look back to these two things that ultimately, in Mr. Strand's career, proved to be very minor. I mean, it was... I mean, the thrust of your argument basically is when this guy was, you know, a young kid, he did, even if it's two incidents, that he had two incidents of inappropriate conduct. It got appropriately resolved, and then almost 20 years later, you know, he committed a much more serious act and served jail time for it, but the Corrections Board got it right when they said that one  you know, keep him from getting a retirement. That's correct, Your Honor. That essentially, the Board looked at the totality of his service... But the Secretary then looked at it again and said, I don't agree. I think the totality of the circumstances here do justify not giving him that service credit. Your Honor, I see I'm out of time. Why is it arbitrary for the Secretary to reach a different conclusion? Would it have been arbitrary for the Board to reach that conclusion in the first instance? I don't know because the Board didn't reach that conclusion. Hypothetically, if it did, would that have been arbitrary? It could have been, Your Honor, if we had a decision like this, where we apply core values to conduct that predates them, where we look at cases like we're not supposed to. I mean, there is an NDRB regulation that says you're not supposed to look at other cases to judge Mr. Strand's case, and I'm out of time. Just to make sure of that, I understand the record, too. After those, the 92 and then the 93, if there was another event. Those were addressed later when Mr. Strand was promoted, right? To a Petty Officer, Chief Petty Officer. He was a Petty Officer. Is a Chief Petty Officer pretty high in the military? Yes, Your Honor, and I can't remember what his exact rate was, but he was a Senior Ranking Enlisted Man by the time he got out. Yeah, I think that's as high as you can get as an enlisted man. And awarded numerous Good Conduct Medals and recommended for early promotions and all of that. You're correct. And those were accounted for. Did the Secretary bring those up, the record itself and the commendations and the medals that he received? She gives it a very brief treatment. I think that the actual treatment of it is only a couple of sentences where she acknowledges his long record of service. Looking for the copy that I have of her decision. I think it's towards the end, too. It is. It's right at the end of the decision, Your Honor. Most of the seven pages are about the incident and an argument that the Navy got it right to discharge Mr. Strand. They upgraded his discharge to honorable discharge. Well, and that's another problem that makes this arbitrary. The Navy has already upgraded the characterization of his discharge to general under honorable conditions. If the Navy sees fit to say that his core values aren't violative enough of the standards to prevent him having a discharge that's characterized as honorable, why should he be denied? What's inconsistent about denying his right? That's not on appeal here. The upgrade. Oh, no, Your Honor. That seems like the kind of quintessential discretionary decision that should be left to the Secretary that an upgrade to a general under honorable is good enough to allow him to have paper to better get a job, but he's still not entitled to full relief. I mean, where does a court come in second-guessing that on, I know you agree that it's arbitrary and capricious, but that sounds pretty much like arguing that we should take our own de novo look at this and say, well, they should have just gone all the way. Your Honor, I think that the shortest answer to your question is it goes back to 732.3E2, and the fact that really all the Secretary's focused on is the initial incident, and that says that that can't be the sole basis. And, Your Honor, did you have a question? Yes, thank you. I apologize, I'm going over my time. Oh, we've got a lot of questions for you, so thank you. My question is, you were talking earlier in your brief around page 32 talks about procedural issues, that it was procedurally improper for the retired military officer to recommend review of the Board of Corrections' decision to the Secretary of the Navy. And I just want to know, was that argument made in the first appeal to our Court? In the first appeal to this Court? Yes. I think it was, Your Honor, although well, let me rephrase that. It was made the first time that this Court, that this case came up. I cannot recall off the top of my head whether that was specifically appealed, because I don't believe I'm not clear. I don't recall seeing it in the first appeal. I don't recall. And of course, if it weren't raised in the first appeal, it wouldn't be proper to be raising it now. It would have had to have been preserved in the first appeal, right? Well, no, Your Honor, because you can only waive arguments that are squarely in dispute, and the problem here is the reason this got waived, or raised, I'm sorry, is that the Navy argued this for the first time in front of the Court as a defense of why the Secretary was allowed to reexamine the Board's decision. The Navy had never previously raised that. But if you had in challenge, so the case was before the Board of Corrections, then they refer it to the Secretary of the Navy. The Secretary of the Navy makes a decision. We review that decision. We send it down. And then on the second appeal coming back to us, you complain about that, the Secretary of the Navy's involvement in the case. It seems to me that that's been waived regardless of what the government has argued. Well, no, Your Honor. So what we argued previously was that the Secretary didn't have absolute discretion to reject the Board's decision. Cases like Herzog, Weiss, and Proper have that issue about a military officer making that recommendation, and we cited all those cases before, though the focus wasn't on the fact that Mr. O'Neill was a military officer because the Navy didn't argue it that way. The way that they argued it was they had discretion, and we argued, no, you don't, because of the statute. It wasn't until we came up this time in the Navy's briefs when they said the way it got framed up was there was a question as to why the Secretary had revisited the decision, and they pointed to the cover note that Mr. O'Neill affixed to the decision and said, this invited us. So it wasn't a new decision. The Board invited us, or invited the AGC, to second-guess it, and it was at that point that we looked at it and said, well, wait a second. Mr. O'Neill is a retired military officer, and you're squarely in this law that says that that's improper. So we would say we haven't waived it because it was never, it was just never an argument that was before the Court the first time it came up. You know, the facts were certainly there, but it wasn't the way that the Navy was and I apologize again. That's all right. Okay. Let's Mr. Green, you have three minutes of rebuttal, but feel free to take a couple minutes more if you need to for it to be complete. Great. Thank you, Your Honor. I believe I just have three points that I want to make. That argument, Judge Stoll, has been waived. The declaration that Mr. Strand relied on was in 2014. This case wasn't initiated until 2015. Mr. Strand has relied on Herzog vice and proper throughout this litigation, both times before the trial court and now both times before this Court and, well, at that time one time before this Court, and it never raised this issue of Mr. O'Neill's status as a military officer until, I believe it was his reply brief in Strand 3. But ultimately, Your Honor, that Mr. O'Neill's status as a former military officer is sort of irrelevant because the secretary doesn't say she even relied on him. He was a civilian. The note just said, hey, look, this is why we're sending this up to you to take a look at it. She never says in her remand decision, well, Mr. O'Neill said the seriousness of the offenses should cause me to look at this. She would have looked at that anyway. She would have looked at the core values anyway because Mr. Strand raised them in his remand letter. So the note really was our way of saying, hey, look, the BC&R itself wasn't even sure that this relief was appropriate in this case. But there's no procedural error in that note being in the record and even if it was, it would be harmless because Mr. Strand's had multiple opportunities to respond to it. The second point I want to make is Mr. Strand characterized the Navy's, the Correction Board's decision as holistic, I believe is the term. We would take the opposite view. It almost seems like the BC&R was in a vacuum when it made its decision. The Correction Board states that Mr. Strand served without disciplinary incident. That's a factual finding the Board made. Well, that's not accurate as we've discussed here today. The two paragraphs of analysis of the Correction Board don't mention the core values and don't mention the Navy's practice in other cases. It seemed that the Board was focused just on what Mr. Strand said and his convictions. It didn't take this broader view that the Secretary took and considered other things that were appropriate. The last thing I want to discuss briefly is... What do you have to say to the applicability of the core values, of a core values analysis to incidents that occurred before the Navy adopted those core values? Well, I have two responses, Your Honor. First of all, that's not what the Secretary did. The Secretary never says, you violated the core values in 1992. My second response is, as the Secretary makes clear and is confirmed by the Navy Core Values Charter, which is in the record before the Court. I can get you the page number. The principles of honor, courage, and commitment have always been applicable to Navy service members. Since the Navy was founded in 1775, we make that point in our brief. Even if she had said that, it wouldn't be a harmful error because everybody who's in the Navy understands they need to exemplify those principles. So those are our two responses to that argument. Mr. Strand spent a considerable amount of time on the proper case. There's two points I'd like to make about that. First of all, in Strickland, this Court analyzed proper advice and said that it was completely consistent with the rule stated in Strickland that the Secretary is the ultimate authority on the correctional practice. Nothing about proper changes casts any doubt on that principle. The second thing is that there was a dissent among the Board members in proper to members dissented. The Court looked at the evidence that those dissenting members relied upon for their conclusion and determined that the evidence they relied on actually didn't support their conclusion. That issue in proper was whether the plaintiffs, I believe it was multiple sclerosis with some neurological disorder, rendered him unable to serve. The two dissenters on the Board referred to medical examinations that did not include a neurological component and said, look, his medical examinations don't show any symptoms of multiple sclerosis or anything like that. This Court looked at that evidence and said, those medical examinations aren't complete. All of the evidence in the record related to his granting the recommendation. When the Secretary in that case relied on a military advisor to deny their recommendation, he went outside the record and committed a procedural error. This Court in Herzog and Weiss held, reached similar conclusions for similar facts. In both of those cases, all the evidence in the record supported the recommendation and the Secretary went outside that record and relied on the advice of the military advisor. You can conclude. Okay, thank you, Your Honor. The United States would just ask that judgment be reversed. Thank you. The next case is in...